# Exhibit 3

Claim No: CFI-048-2018

THE DUBAI INTERNATIONAL FINANCIAL CENTRE COURTS

IN THE COURT OF FIRST INSTANCE
BETWEEN

**SKAT**

**(The Danish Customs and Tax Administration)**

Claimant

and

**(1) ELYSIUM GLOBAL (DUBAI) LIMITED**

**(2) ELYSIUM PROPERTIES LIMITED**

Defendants

---

**ORDER WITH REASONS OF JUSTICE SIR JEREMY COOKE AND CLARIFICATIONS OF ORDERS PURSUANT TO REQUEST OF THE SUPERVISING LEGAL REPRESENTATIVE**

---

**UPON** the Claimant's Application by application notice issued on 6 December 2018 (the "Application")

**AND UPON** reading and considering the Third and Fourth Witness Statements of Damian Crosse dated 5 December and 23 December 2018 and the First Witness Statement of Jonathon Davidson dated 20 December 2018

**AND UPON** reading and considering the Request for Directions and Clarification contained in the Second Report of the Supervising Legal Representative (the "SLR") dated 23 December 2018 in respect of earlier Court orders

**AND UPON** the Court determining that the Application and Request for Directions and Clarification are best determined on paper without the need for a hearing

**IT IS HEREBY ORDERED THAT:**

1. In this Order:

    (a) "the Search Orders" means:

1

    (i)    the Search Order of Justice Sir Jeremy Cooke dated 27 June 2018, as varied by the Order of Justice Sir Jeremy Cooke dated 8 July 2018;

    (ii)    the Search Order of Justice Sir Jeremy Cooke dated 17 July 2018;

    (iii)    the Order of Justice Sir Jeremy Cooke dated 31 July 2018;

    (iv)    the Order of Justice Sir Jeremy Cooke dated 12 August 2018;

    (v)    the Order of Justice Sir Jeremy Cooke dated 30 September 2018; and

(b) "the Freezing Orders" means:

    (i)    the Freezing Order of Justice Sir Jeremy Cooke dated 27 June 2018; and

    (ii)    the Freezing Order of Justice Sir Jeremy Cooke dated 17 July 2018

2. The Claimant has permission to use any information or documents obtained as a result of or by carrying out the Search Orders and the Freezing Orders for the purpose of commencing or pursuing civil proceedings in relation to the same or related subject matter as these proceedings in:

(a) the courts of Malaysia; and

(b) the courts (including both federal and state) of the United States of America.

3. Costs of the Application to be costs in the case.

**The SLR's Request**

4. The following Directions and Clarification are given pursuant to the SLR's Request in his Second Report, by reference to the paragraphs in that Report and the definitions and terminology used in that Report:

(a) Paragraph 1.8:

    (i)    The Defendants shall make such application to the Court as they may be advised, with any supporting evidence and written submissions within 14 days of the date of this order in respect of any claim to privilege which they assert in the Disputed Retained Documents, without exhibiting the documents in question, failing which the Disputed Retained Documents shall be released to the Claimant.

  (ii) If any such application is made, the SLR and the Claimant shall submit any response with any supporting evidence and written submissions within 14 days of receipt of the Defendants' application referred to in sub-paragraph (i) hereof.

  (iii) If the SLR considers that the Court should inspect any of the documents in question, he should notify the Court accordingly and the Court will determine whether or not to effect such an inspection.

  (iv) Unless the Court determines otherwise, the application shall be determined by the Court on paper only, without a hearing.

(b) Paragraph 2.11:

  (i) The Defendants shall make such application to the Court as they may be advised, with any supporting evidence and written submissions within 14 days of the date of this order in respect of any claim to privilege which they assert in the Disputed Black Box Documents, without exhibiting the documents in question, failing which the Disputed Black Box Documents shall be released to the Claimant.

  (ii) If any such application is made, the SLR and the Claimant shall submit any response with any supporting evidence and written submissions within 14 days of receipt of the Defendants' application referred to in sub-paragraph (i) hereof.

  (iii) If the SLR considers that the Court should inspect any of the documents in question, he should notify the Court accordingly and the Court will determine whether or not to effect such an inspection.

  (iv) Unless the Court determines otherwise, the application shall be determined by the Court on paper only, without a hearing.

(c) Paragraph 3.6: The expression in paragraph 2 of the Order of 31 July 2018, in relation to any document which *"falls within the orders made by the Crown Court in England and Wales"* means any document which is expressly covered by any order of the Crown Court which prevents its disclosure outside those Crown Court proceedings.

(d) Paragraph 4 and in particular paragraphs 4.8 and 4.9: Paragraph 5 of the Order of 12 August 2018 sets out the categories of "privilege" which apply to all categories and classes of documents, whether in hard copy or electronic form, for the purposes of the determination to be made under paragraph 2 of the Order of 31 July 2018.

(e)  Paragraph 5.6: Flag 3 of paragraph 5 of the Order of 12 August 2018 covers only documents which are expressly subject to an order made in the English Criminal Restraint Proceedings before HHJ Hopmeier sitting in the Kingston and Southwark Crown Courts which prevents their use in other proceedings. It does not cover orders made in those proceedings unless HHJ Hopmeier has expressly so ordered.

(f)  Paragraph 6.2: Flag 4 of Paragraph 5 of the Order of 12 August 2018 covers witness statements served in the Criminal Restraint Proceedings and subject to Rule 33.6 of the English Procedure Rules. That includes the exhibits to such witness statements because they are to be treated as part of those witness statements but does not include any of the documents exhibited, if found elsewhere in the Respondent's documents, whether in hard copy or electronic form. To those documents found elsewhere, the other "flags" of privilege fall to be applied to determine whether they are "privileged" within the meaning of the Orders of the Court and how they fall to be dealt with by the SLR.

(g)  The SLR shall be entitled to his costs as SLR.

5. Liberty to apply to the Court for further clarification of the directions and clarification given.

Issued by:
**Ayesha Bin Kalban**
Assistant Registrar
Date of issue: 26 December 2018
At: 10am



## SCHEDULE OF REASONS

**Reasons for the Application**

1. Justice requires that the Claimant be permitted to use the documents disclosed in the DIFC for the purpose of recovering monies in the USA and Malaysia where it is alleged that such monies have been wrongly paid out by way of refund of withholding tax as the result of a large-scale fraud involving US and Malaysian defendants. Those documents have already been made available for the English proceedings and the same principles which allowed for use in that court should apply to the US and Malaysian courts. The Claimant must be entitled to pursue such claims for recovery and justice requires that the courts there should receive the maximum information available in the shape of relevant documentation. There is good prima facie evidence that those courts would not have the benefit of these documents without such orders being made by this Court.

2. No applications have been made by the Defendants:
    2.1. To set aside the search and seizure orders nor the freezing orders;
    2.2. To retrain the use of confidential information in the hands of the Claimant or its solicitors or advisers;
    2.3. To enjoin the Claimant's solicitors or advisers from acting for the Claimant.

3. In such circumstances the Court can only proceed on the basis of the validity of the orders it has made and the entitlement of the Claimant's solicitors and advisers to act for it unless justice requires that a dispute over such matters constitutes good reason not, in justice to make the orders sought. There is no such reason and justice requires that the orders be made.

4. There is no prejudice to the Defendants in making the orders since issue estoppel will only arise in relation to the Malaysian or US Proceedings, if the Defendants are party or privy to those proceedings within the meaning of the doctrine of res judicata / issue estoppel.

5. Any recovery from defendants in the US or Malaysian proceeding will redound to the benefit of the Defendants in the DIFC proceedings in the absence of any third party claim by such US or Malaysian defendants against them.

6. If third party proceedings are commenced by the defendants in the proceedings in the US or Malaysia, the documents would be disclosable anyway. If the Defendants are not joined in those proceedings and are not party or privy to them, then any claim made against them, by the defendants in those proceedings would be determined by the Courts seized of the matter in England, DIFC or Dubai, alongside the Claimant's claim and liability would be determined by that court.

7. If the Defendants consider that they haves an interest in the US or Malaysian proceedings, which requires them to explain the position to those courts, to avoid any error being made by those courts to their prejudice, they could apply to be joined in them. They have not

5

done so nor given any reason for not doing so. All arguments as to any such wrong decision will remain open to the Defendants in the DIFC Court if they are not party or privy to the defendants there. If they are privy, then they can doubtless ensure that all arguments are properly put there.

8. The width of the documents sought is nothing to the point. The DIFC Court is not restricted in making orders of this kind and can do what is necessary to serve the ends of justice. As long as the documents are not privileged (and extensive steps have been taken to ensure that privilege is maintained) the courts in question can determine what is and is not relevant and material to its decisions. It is self- evident that there is relevance and materiality in some of the documents for the reasons given by Mr Cross in his witness statements.

9. It would be wholly impractical for the DIFC court to filter out what is relevant from what is not for the purposes of the order and would delay matters to such an extent to render the prosecution of the proceedings with such documents impossible, certainly in US with a hearing for directions fixed for 24 January 2019. The parties can be expected to address that issue and to put before the foreign courts only those documents which are material to the cases they respectively make.

10. It would also be wholly unjust if the Defendants were able to supply the defendants in the US and Malaysia with documents which support their case, whatever it may be, at their option, without the courts there having the benefit of seeing the whole picture which emerges from the documents in their overall context and other documents which cast a different light on the matter. The foreign court would wish to see all material documentation available in order to make its determination.

**Reasons for Order for Clarification / Directions**

11. The SLR has sought such direction and clarification and it is right that he should receive the assistance he seeks in what appears to be a much more arduous task that was originally envisaged. The clarification is hopefully sufficient but there is liberty to apply.

12. The Defendants have objected to release of some documents on the ground of privilege, where the SLR has taken the view that privilege does not apply. In the light of the orders made by this Court and the material put before the Court by the SLR, it is clear that the Defendants should long since have made an application to the court in respect of their objections but have not done so. It is in the light of that history that a 14 day time limit has been set for any such application, despite the holiday period in the UK and for release in the absence of any such application.